STATE of Iowa, Appellee,

v.

Duane George SCHLEMME, Appellant.

No. 64668.

Supreme Court of Iowa.

Feb. 18, 1981.

Thomas F. Peckosh, Maquoketa, for appellant.

Thomas J. Miller, Atty. Gen., Ms. Merle Wilna Fleming, Asst. Atty. Gen., and Michael Kane, Jackson County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, McGIVERIN, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

Defendant, Duane George Schlemme, appeals from his conviction of the crime of operating a motor vehicle while under the influence of an alcoholic beverage (OMVUI)

in violation of section 321.281, The Code 1979. Defendant had been arrested by a state trooper and then processed under the implied consent provisions of chapter 321B, The Code, by a second trooper. The sole issue presented is whether the failure of the second trooper to rearrest defendant caused the results of a blood test taken pursuant to those provisions to be inadmissible evidence. We hold that the evidence was admissible and affirm the trial court.

A state trooper stationed in Dubuque County while on a routine patrol met a pickup truck that appeared to be speeding. After turning around, the trooper followed the pickup and clocked it at seventy-five miles per hour. He stopped the pickup in rural Jackson County and determined that the driver, defendant Schlemme, had been consuming alcoholic beverages. He then gave defendant a breathalyzer test and arrested him for OMVUI. The trooper then radioed a second trooper, who was working in Jackson County, and asked the trooper to process the defendant. The second trooper responded to this request and took custody of the defendant at Zwingle. After transporting defendant to Maquoketa, the second trooper requested defendant to submit to a blood test under the implied consent provisions contained in chapter 321B, The Code. The second trooper did not rearrest defendant.

Defendant consented to the blood test, was charged by trial information with OMVUI, and pleaded not guilty. At trial defendant objected to the introduction of the results of the blood test, alleging that a proper foundation had not been laid. Defendant asserted that section 321B.3 requires that the defendant be arrested by the same officer who requests the blood test. Despite his objection, testimony was taken and exhibits were received concerning the procedures and the results of the blood test. Before sentencing, defendant moved for a new trial, stating that the results of the blood test were prejudicial and should not have been admitted into evidence. This motion was overruled.

Determination of the issue involved in this appeal centers on the interpretation to be accorded the portion of section 321B.3 which provides:

The withdrawal of ... body substances, and the test or tests thereof, shall be administered at the written *request of a peace officer* having reasonable grounds to believe the person to have been operating a motor vehicle upon a public highway of this state while under the influence of an alcoholic beverage, and only after *the peace officer has placed such person under arrest* for the offense of operating a motor vehicle while under the influence of an alcoholic beverage.

(emphasis added). No issue has been presented concerning whether or not reasonable grounds existed for the arrest or concerning the validity of any other procedures.

Defendant does not question the qualifications of either state trooper to request the test. Further, he does not question our holding in *Schmoldt v. Stokes,* 275 N.W.2d 209, 210 (Iowa 1979), that an original arresting officer need not make the request for the test; a subsequent qualified officer may make a valid request after rearresting the individual. However, in *Schmoldt* we expressly left open the question "whether the second officer may, in demanding a test, rely on the arrest by the original officer." *Id.* We now must make this determination.

■ The State has the burden of proof to supply foundational facts for the admission of results of tests conducted pursuant to chapter 321B. Defendant argues that the statute requires that a test must be requested by an arresting officer, and that the second trooper's failure to arrest defendant rendered the State incapable of establishing a foundational fact necessary for admission of the test results.

The State claims that the statute is ambiguous and reasonable minds could differ as to its interpretation. It insists that a reasonable interpretation of the statute would allow a second qualified peace officer to demand a test without rearresting the

defendant. The State therefore maintains the trial court did not err in admitting evidence of the results of the blood test taken from the defendant.

 Statutory construction is properly invoked when a statute contains such ambiguities or obscurities that reasonable minds may disagree or be uncertain as to their meaning. *Janson v. Fulton*, 162 N.W.2d 438, 443 (Iowa 1968). Even though statutory words have an ordinary and commonly understood meaning, if adherence to the strict letter of the law will lead to injustice, absurdity, or contradictory provisions, we will look for another meaning. *See City of Fort Dodge v. Iowa Public Employment Relations Board*, 275 N.W.2d 393, 396–97 (Iowa 1979). Our ultimate goal in interpreting statutes is to determine legislative intent. In this endeavor we are aided by certain principles of statutory construction. We may consider the language used in the statute, the objects sought to be accomplished, the evils and mischief sought to be remedied, and place a reasonable construction on the statute which will best effectuate its purpose rather than one which will defeat it. *Crow v. Shaeffer*, 199 N.W.2d 45, 47 (Iowa 1972). We must examine both the language used and the purpose for which the legislation was enacted and consider all parts together without giving undue importance to one single or isolated portion. *Wilson v. Iowa City*, 165 N.W.2d 813, 822 (Iowa 1969).

In applying these principles it is initially necessary to determine the general purpose of chapter 321B. The legislature, in enacting the provision, stated "that the provisions of this chapter are necessary in order to control alcoholic beverages and aid the enforcement of laws prohibiting operation of a motor vehicle while under the influence of an alcoholic beverage." § 321B.1, The Code. We have frequently stated that the general purpose of the implied consent law is "to reduce the holocaust on our highways

part of which is due to the driver who imbibes too freely of intoxicating liquor." *State v. Hitchens*, 294 N.W.2d 686, 687 (Iowa 1980); *Krueger v. Fulton*, 169 N.W.2d 875, 878 (Iowa 1969); *Severson v. Sueppel*, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (1967).

Specific procedural requirements are contained in sections 321B.3 and 321B.4. Among these requirements are: that arrest be made by a qualified peace officer; that the peace officer must have reasonable grounds to believe the arrested person was driving while under the influence of an alcoholic beverage; that a written request be made by the peace officer; that the peace officer select the particular test to be performed—breath, blood, saliva, or urine; that only designated medical personnel may withdraw such substances [1]; that the person taking the sample be requested by the peace officer in writing to withdraw the substance; that the test be provided within two hours after the arrest; and other restrictions relating to the type, care, condition, and operation of the test equipment.

 The purpose of these procedural requirements is to protect the health of the person submitting to the test and to guarantee the accuracy of the test for use in judicial proceedings. *State v. Wallin*, 195 N.W.2d 95, 97 (Iowa 1972). In effectuating these purposes and balancing them against the general purpose of the statute, we have not hesitated to hold evidence inadmissible when the standards were not complied with and thus endangered health or the accuracy of the test. *See, e. g., State v. DeBerg*, 288 N.W.2d 348, 350 (Iowa 1980) (State failed to prove syringes and needles were originally factory wrapped and disposable); *State v. Smith*, 272 N.W.2d 859, 860–62 (Iowa 1978) (urine placed in blood test bottle containing anticoagulant with no testimony as to effect of this mixture); *State v. Richards*, 229 N.W.2d 229, 233 (Iowa 1975) (peace officer failed to make timely *written* request of

1. The scope of this requirement was restricted in *Janson v. Fulton*, 162 N.W.2d 438, 443 (Iowa 1968) (emphasis added): "We think the legislative requirement that one of the designated trained persons be the only person who may withdraw such body substance[s] was intended to be limited to withdrawal of blood or other body substances *by artificial means*."

defendant to submit to blood test); *State v. Wallin*, 195 N.W.2d at 98 (peace officer failed to make written request directing physician to withdraw blood, and syringe and needles did not meet statutory specifications); *State v. Shelton*, 176 N.W.2d 159, 161 (Iowa 1970) (evidence failed to establish that nurse had been designated by licensed physician to withdraw blood and failed to establish that proper syringe was used).

However, we have adhered to the general purposes of the chapter and allowed admission of evidence when objections based upon specific lack of foundation requirements did not endanger the defendant's health or did not endanger the accuracy of the test. *See, e. g., Schmoldt v. Stokes*, 275 N.W.2d at 210 (when original arresting officer did not demand test, subsequent qualified officer who rearrested defendant could request test); *State v. Winquist*, 247 N.W.2d 256, 259 (Iowa 1976) ("medical technologist" as used in statute dependent upon training as microbiologist and experience in withdrawal of blood and not technical requirement of certification by American Society of Clinical Pathologists); *Janson v. Fulton*, 162 N.W.2d at 441–42 (language in statute requiring physician, medical technologist, or registered nurse designated by licensed physician to withdraw "body substances" does not prevent peace officer from taking urine, breath, or saliva sample as legislature did not intend literal construction); *Severson v. Sueppel*, 260 Iowa at 1174, 152 N.W.2d at 284 (peace officer who did not see defendant drive may rely on observations of other peace officers for reasonable grounds to believe that he was guilty of offense).

Defendant maintains that since the literal terms of the statute require the arresting peace officer also be the officer who invokes the implied consent procedures, the legislature intended a literal construction of the provision to be controlling. We believe that a literal interpretation is contrary to the general purposes of the statute. It would not protect the health of the accused or the accuracy of the test, and a rearrest requirement is not sensible, practical, or logical.

When an individual is arrested, the person is taken into custody in a manner authorized by law, including restraint of the person or his or her submission to custody. § 804.5, The Code. When the second trooper took charge the defendant was already in custody; there was no need to rearrest the defendant unless the first arrest was invalid. Here, no one questioned the validity of the first arrest, and both officers were competent to administer the implied consent procedures. § 321B.2(1), The Code. We fail to perceive any gain or protection that would be provided by such a ritual.

This court fails to see where any of the defendant's rights were affected by the failure to rearrest him. Both peace officers were equally trained. The fact that the second trooper invoked the test procedures in no way serves as a health hazard to the defendant; nor does it affect the accuracy of the test. The purpose of the written request by a qualified peace officer is to ensure the accuracy of the proceedings and provide written proof of what transpired. Neither of these purposes are prejudiced by having a second qualified peace officer invoke the implied consent procedures without personally making the arrest.

We hold that the legislature did not intend that the original arresting peace officer must necessarily be the peace officer who invokes the implied consent procedures. In most instances there will be only one peace officer involved, and we believe that is the situation to which the literal language of the statute was intended to apply. The district court's ruling was correct.

AFFIRMED.