STATE of Iowa, Appellee,

v.

Mark William MEISSNER, Appellant.

No. 65740.

Supreme Court of Iowa.

Feb. 17, 1982.

John R. Becker, Dubuque, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., Robert J. Curnan, Dubuque County Atty., and Lawrence H. Fautsch, Asst. Dubuque County Atty., for appellee.

HARRIS, Justice.

Defendant's appeal follows his conviction of operating a motor vehicle while intoxicated, second offense, in violation of section 321.281, The Code 1979. There was ample evidence to establish the elements of the charge. The sole question is whether the trial court erred in admitting evidence of defendant's oral refusal to submit a body specimen under the implied consent law. § 321B.11, The Code. We affirm the trial court.

Following an accident and defendant's arrest he was taken to the Dubuque police station where his interview with police officers was recorded by video tape. The interview was brief, lasting about four minutes. When asked his name the defendant refused to answer. The officer then read a written request to the defendant as follows:

Okay, Mark. I will read you this sheet of paper here. Implied consent law requires that a peace officer advise the arrested person of the following: Refusal to submit to the withdrawal of a body specimen, chemical test, to determine the alcoholic content will result in revocation of your driver's license for privilege to operate a motor vehicle for not less than 120 days nor more than one year. Having reasonable grounds to believe you operated a motor vehicle upon a public highway while under the influence of an alcoholic beverage and having arrested you for this offense, I hereby request that a specimen of your blood be withdrawn for chemical test thereof to determine the alcoholic content. The time requested is 3:18 a. m.

Do you consent or refuse to a blood test? Are you going to consent or refuse?

MR. MEISSNER: I refuse.

OFFICER STEINMANN: You refuse. Okay. Having refused to submit to a withdrawal of your blood for chemical testing, I hereby request a specimen of your urine be withdrawn for chemical test thereof to determine the alcoholic content. Do you consent or refuse to that?

MR. MEISSNER: I refuse.

OFFICER STEINMANN: You refuse. Okay. Now, I want you to look right here, Mark. "I have been informed that my driver's license for privilege to operate a motor vehicle will be revoked for failing to provide a specimen of a specified body substance for chemical testing."

I would like you to make an "X" in the "Refuse" and sign your name right here.

MR. MEISSNER: I would like to speak to my lawyer first.

OFFICER STEINMANN: You can just sign this right here. You have already told us you refused. This is just stating—

MR. MEISSNER: But that may not be in my best interest.

OFFICER STEINMANN: Are you going to sign it or refuse? Do you refuse to sign the paper?

MR. MEISSNER: Yes. Right.

■ An arrested person has the right under section 804.20, The Code, to consult an attorney. There was no requirement here that the defendant be told of this right by the officer. It was only required that any such request be honored. *State v. Vietor*, 261 N.W.2d 828, 831 (Iowa 1978). In *Vietor*, 261 N.W.2d at 832, we held that chemical test results were rendered inadmissible where a request to consult counsel was refused. In *State v. Richards*, 229 N.W.2d 229, 233 (Iowa 1975), we held the officer's request for body specimens under section 321B.3 had to be written, not oral.

Section 321B.11, The Code, provides:

If the person under arrest refuses to submit to the test or tests, proof of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was operating a motor vehicle upon a public highway of this state while under the influence of an alcoholic beverage.

■ Notwithstanding this provision the defendant protested in a pretrial motion to suppress, at trial, and on appeal that evidence of his refusal should not have been admitted. He argues the evidence was tainted because he was denied assistance of counsel in the formulation of his refusal. It is to be noted that his refusals preceded his request for counsel. We are not involved here with chemical test results or a refusal to submit specimens which followed a refusal of the accused's rights to consult counsel.

Defendant is thus faced with a wrong factual sequence. His request for counsel came after, not before, his refusal to submit specimens. To meet this obvious difficulty he suggests the officer's request for specimens remained oral and did not become written until the paper was physically handed to him. We disagree.

■ We think there was compliance with the 321B.3 requirement that the demand for specimens be in writing. In making the demand the officer told defendant he was reading from a paper. He did so; there is no suggestion the paper was misread. Defendant could see the paper. There was nothing wrong with the form of the demand. In *Gottschalk v. Sueppel*, 258 Iowa 1173, 1183, 140 N.W.2d 866, 872 (1966), we pointed out:

. . . [T]he statute does not provide that the written request of the officer for a chemical test be handed or given to the arrested motorist or served upon him in the manner of an original notice commencing a civil action. It provides merely "The withdrawal of such body substances, and the test or tests thereof, shall be administered at the written request of a peace officer . . . ." It is fair to assume the statute would have provided the written request be handed or given the motorist if the legislature intended such a requirement. It is not our province to write such a requirement into the statute.

This 1966 construction of the written request requirement of section 321B.3 has stood without legislative reaction or judicial revision since then. A plausible argument exists for construing the statutory language to require manual delivery of the request. The trial court's construction of the statute is also plausible, however. By analogy, jury instructions are required to be in writing. Iowa R.Civ.P. 196. Yet the court instructs by reading the instructions to the jury. Neither the implied consent procedure nor instructing of the jury is required to be reported. In each situation the writing provides a record of the relevant communication. This promotes accuracy and furnishes a record for subsequent review.

The problem in *State v. Richards*, 229 N.W.2d 229 (Iowa 1975), was that an effort was made to reconstruct the record after the fact. We held this could not be done. *Id.* at 233. A strict construction of the statute required the written request to exist before it could be said to have been made. The *Richards* problem is not present in this case.

Even though some persons may understand the request better if they read it rather than have it read to them, reliance on writings presumes a level of literacy which even in this state is not always warranted. We have previously noted certain other advantages to being addressed personally rather than in writing. *See State v. Fluhr*, 287 N.W.2d 857 (Iowa 1980).

We find the court's construction of the statute at least as plausible as the construction urged by defendant. We are not persuaded to change the construction of the statute which has prevailed to sixteen years.

■ We again refuse to superimpose upon the implied consent chapter the additional requirement of physical delivery of the written demand. Under the circumstances here the demand was sufficient.

AFFIRMED.

All Justices concur except REYNOLDSON, C. J., and ALLBEE, LeGRAND and LARSON, JJ., who dissent.

ALLBEE, Justice (dissenting).

Because I cannot agree with the majority's conclusion that the "written request" requirement of section 321B.3, The Code, is satisfied by merely reading the request to the arrested motorist, I must dissent. If an oral rendition is held to suffice, the statutory requirement that the request be in writing becomes meaningless.

The majority relies upon dictum in *Gottschalk v. Sueppel*, 258 Iowa 1173, 1183, 140 N.W.2d 866, 872 (1966), which opines that the written request required by section 321B.3 need never be handed to or read by the arrested motorist, so long as it is read *to* him. An examination of the statutory scheme enacted by the legislature in chapter 321B, however, indicates a legislative intent to the contrary; thus, the *Gottschalk* dictum should not be followed.

Chapter 321B is entitled the "Uniform Chemical Test for Intoxication Act." § 321B.14, The Code 1979. Although the chapter constitutes a "substantial adoption" of the uniform act approved by the Conference of Commissioners on Uniform State Laws, see 9 Uniform Laws Annotated, 1967 Supp. at 64 (1957), the Iowa legislature added numerous safeguards for the rights of arrested persons not found in the uniform act. *Compare* Iowa Code §§ 321B.1–.13 *with* Uniform Chemical Test for Intoxication Act, 9 Uniform Laws Annotated, *supra*, 1967 Supp. at 65–69. Notable among these is the requirement that a "written request" must precede the taking of a body specimen for testing; the uniform act contains no such requirement. *See* 9 Uniform Laws Annotated, *supra*, 1967 Supp. at 65. Other examples of safeguards added to the uniform act by the Iowa legislature include the requirement that testing be preceded by an arrest, § 321B.3; the provision that refusing a blood test alone does not constitute a "refusal," *id.*; the requirement that a police officer's request to a medical person for withdrawal of a body specimen be in writing, § 321B.4; various requirements relating to the accuracy of the test and the health of the arrested

person, *id.*; the provision that testing may not be performed upon a dead, unconscious or otherwise incapacitated person unless a licensed physician certifies in advance that the person is so incapacitated, § 321B.5; and the requirement that the defendant be notified that refusal of a chemical test will result in revocation of his driver's license, § 321B.6.

This comparison of chapter 321B with the uniform act upon which it was based clearly indicates that the Iowa legislature was concerned with providing greater fairness and protection for the arrested person during implied consent proceedings, and that each of the foregoing provisions was purposely added with that objective in mind. The "written request" requirement being one of those added provisions, I can only conclude that its purpose was to increase the fairness of the implied consent procedure by giving the arrested motorist an opportunity to see in writing his options under the law and to consider those options at his own mental pace.

This conclusion is supported by *State v. Richards*, 229 N.W.2d 229 (Iowa 1975), in which this court required strict compliance with the terms of section 321B.3. The *Richards* court observed that the "written request" mandated by the statute "must ... be unequivocal and in proper form. Anything less would unduly dilute the procedural safeguards in the statute." *Id.* at 234 (citation omitted).

Based on the foregoing, I would hold that defendant's initial refusals to submit to a chemical test were not made in response to a "written request" and therefore were not binding on him. *Cf. Richards*, 229 N.W.2d at 233–34 (defendant not bound by her consent to officer's oral request for chemical testing). Once defendant *was* given an opportunity to read the written request for himself, his first response was to ask to consult an attorney. Honoring defendant's request would not have "interfere[d] with the taking of a test within the time specified in § 321B.3," *State v. Vietor*, 261 N.W.2d 828, 832 (Iowa 1978), because nearly an hour and a half of the statutory two-

hour period remained. Therefore, defendant was denied his right to consult with counsel under section 804.20, The Code, and "evidence of his refusal to take [a] chemical test [was] inadmissible at [his] later criminal trial." *Vietor*, 261 N.W.2d at 832. Trial court erred in admitting that evidence. I would reverse.

REYNOLDSON, C. J., and LeGRAND and LARSON, JJ., join in this dissent.