**STATE of Iowa, Appellant,**

v.

**Stacy Lynn HOPKINS, Appellee.**

**No. 90–409.**

Supreme Court of Iowa.

Feb. 20, 1991.

Thomas J. Miller, Atty. Gen., Mark Joel Zbieroski, Asst. Atty. Gen., William H. Appel, County Atty., and R.T. Starken, Asst. County Atty., for appellant.

Thomas M. Walter of Johnson, Hester & Walter, Ottumwa, for appellee.

SCHULTZ, Justice.

We granted the State's request for discretionary review of the trial court's ruling suppressing evidence of the results of a blood test taken under the implied consent statute, Iowa Code section 321J.6 (1989). The defendant, Stacy Lynn Hopkins, was charged with the crime of operating while intoxicated or drugged in violation of Iowa Code subsection 321J.2(2)(b) (1989), second offense. The trial court suppressed the evidence gained from the implied consent procedure. We reverse the suppression order and remand for further proceedings.

The relevant facts are uncomplicated. The defendant was operating a motor vehicle which collided with a telephone pole at approximately 1:00 a.m. A city policeman, a certified peace officer who has had considerable extra training and acts as the city's accident investigator, was called to the scene. Upon arrival, he found a portion of the pole lying on top of the car and the defendant seated behind the steering wheel. He detected the odor of an alcoholic beverage on her breath and observed that she had difficulty producing her driver's license. An ambulance took her to the local hospital.

The undisputed evidence from the hospital medical reports was that defendant

complained of back pain and sustained multiple contusions as the result of her collision with a telephone pole. The medical reports also revealed that she was "obviously intoxicated."

The State relies upon defendant's injuries as a statutory justification for demanding the chemical test. The trial court concluded that it was essential for the officer to have knowledge of injury but that this knowledge was absent. The officer responded in the affirmative when defense counsel asked the question: "You didn't see any personal injury and you have no personal knowledge of any personal injury she [defendant] sustained." However, other observations mitigate this response. Even though the officer observed defendant in her wrecked vehicle and stated he saw "no major injuries," he did not move her. He turned her over to the ambulance crew who placed her in the ambulance. In addition, he saw defendant in the hospital trauma room being examined by a doctor who ordered x-rays and bloodwork. The officer could not assume the ambulance crew and the doctor would take these actions in the absence of injury.

The officer's observations and actions in invoking the implied consent provision without arresting defendant suggests the officer believed that defendant was injured even though he did not see or have personal knowledge of an injury. More important, we conclude the trial court required an element of proof not exacted by statute.

**I.** *Implied consent.* The legislature has provided extensive rules associated with the testing of suspected intoxicated drivers. Iowa Code §§ 321J.6–.22. Authority for chemical testing of bodily substances from persons suspected of driving while intoxicated is provided in section 321J.6.[1] Under this section, a motor vehicle operator may be deemed to have consented to the withdrawal of specified bodily substances for chemical testing of alcohol concentration. The peace officer may make a written request for the withdrawal of a bodily substance if: (1) Pursuant to subsection 321J.6(1), the officer has reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2; and (2) among other possibilities and pursuant to subsection 321J.6(1)(b), the driver "has been involved in a motor vehicle accident or collision resulting in personal injury or death." *See State v. Owens*, 418 N.W.2d 340, 342 (Iowa 1988) (applying Iowa Code section 321B.3 (1985), a predecessor to subsection 321J.6(1)(b)). Subsection 321J.6(1) requires the officer to have reasonable grounds to believe the person has been driving under the influence of alcohol or a drug. The plain and unambiguous language contained in subsection (b) requires only that the person be involved in a motor vehicle accident resulting in personal injury or death. It does not address the officer's knowledge of injury or death.

1. Section 321J.6 provides in relevant part:

1. A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of drugs, subject to this section. The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2, and if any of the following conditions exist:

a. A peace officer has lawfully placed the person under arrest for violation of section 321J.2.
b. The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.
c. The person has refused to take a preliminary breath screening test provided by this chapter.
d. The preliminary breath screening test was administered and it indicated an alcohol concentration as defined in section 321J.1 of .10 or more.
e. The preliminary breath screening test was administered and it indicated an alcohol concentration of less than .10 and the peace officer has reasonable grounds to believe that the person was under the influence of a drug other than alcohol or a combination of alcohol and another drug.

In this case, the trial court concluded subsection (b) required that the officer "at least should have knowledge of the actual existence of a personal injury." The court suppressed the evidence of the test because the officer did not have this knowledge. However, the undisputed evidence shows that the conditions in subsection (b) were satisfied; a motor vehicle accident occurred and defendant suffered injury. The narrow issue is whether subsection 321J.6(1)(b) requires that a peace officer have knowledge of the actual existence of personal injury.

■■■ II. *Legislative intent.* When the meaning of a statute is in dispute, we resort to certain principles. Our ultimate goal is to determine legislative intent. Two rules, that on first blush may appear incompatible, aid us here. First, if a statute is unambiguous and its meaning clear, we need not search for meaning beyond its express language. *Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d 353, 356 (Iowa 1986). Second, we look beyond the ordinary meaning of the statutory language when a statute's literal terms are in conflict with its general purpose. *Janson v. Fulton*, 162 N.W.2d 438, 443 (Iowa 1968). In considering this second possibility, we may consider the objects sought to be accomplished and "place a reasonable construction on the statute which will best effectuate its purpose rather than one which will defeat it." *State v. Schlemme*, 301 N.W.2d 721, 723 (Iowa 1981) (quoting *Crow v. Shaeffer*, 199 N.W.2d 45, 47 (Iowa 1972)).

The literal requirements of subsection (b) appear clear and certain. However, we examine the purpose underlying enactment of the implied consent statute to determine if there is a conflict between the legislature's intent and the statute's express language. Previously, we have stated that the general purpose of section 321J.6 "is to reduce the holocaust on our highways" caused by intoxicated drivers. *State v. Kelly*, 430 N.W.2d 427, 429 (Iowa 1988); *Schlemme*, 301 N.W.2d at 723; *State v. Hitchens*, 294 N.W.2d 686, 687 (Iowa 1980); *Krueger v. Fulton*, 169 N.W.2d 875, 878

(Iowa 1969) (quoting *Severson v. Sueppel*, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (1967)). The purpose of the specific procedural requirements in invoking implied consent "is to protect the health of the person submitting to the test and to guarantee the accuracy of the test for use in judicial proceedings." *Schlemme*, 301 N.W.2d at 723.

The trial court implied a further purpose by stating "[s]ection 321J.6 is a procedural step to protect against indiscriminate testing or harassment of citizens." We agree that subsection (1), which requires the officer to have "reasonable grounds to believe that the person has been operating a motor vehicle [under the influence]," is meant to protect citizens from the consequences of the terms of implied consent unless valid reasons exist for testing. The additional conditions specified in subsection (b), requiring involvement in an accident or collision and the existence of injury or death, bears little relationship to the goal of protecting sober drivers from being tested. These conditions are totally inapposite to health concerns or accuracy of the test. Rather, we believe the legislative purpose in enacting subsection (b) was to require testing of drivers involved in serious accidents when the officer had reasonable belief that a driver was under the influence. This purpose is consistent with the dominant purpose of eliminating injuries and death on the highway. We conclude that the stated requirements of subsection (b) do not conflict with the purpose of the implied consent law.

More important, if the legislature intended more than proof of the existence of injury by requiring the officer to have actual knowledge of the injury, it would have expressly stated this additional requirement. We were presented with an analogous problem when an officer read a defendant a written request to submit to the withdrawal of blood rather than handing it to him. *State v. Meissner*, 315 N.W.2d 738, 740–41 (Iowa 1982). We quoted language from an earlier implied consent case, *Gottschalk v. Sueppel*, 258 Iowa 1173, 1183, 140 N.W.2d 866, 872 (1966), as follows:

It is fair to assume the statute would have provided the written request to be handed or given the motorist if the legislature intended such a requirement. It is not our province to write such a requirement into the statute.

We then declared that "we again refuse to superimpose upon the implied consent chapter [an] additional requirement...." *Meissner,* 315 N.W.2d at 741. We believe the language in *Meissner* is also applicable in this case. We conclude the trial court erred by adopting a requirement of actual knowledge of the existence of an injury.

III. *Conclusion.* The trial court found that the officer had reasonable grounds to believe that the defendant was operating a motor vehicle in violation of section 321J.2. The additional requirements in subsection 321J.6(1)(b) for admission of the blood test were met. There is no other claim that the implied consent procedure was not properly conducted. Therefore, the results of the blood test should not have been suppressed.

REVERSED AND REMANDED.

All Justices concur except HARRIS, J., who dissents and is joined by LAVORATO, NEUMAN, and SNELL, JJ.

HARRIS, Justice (dissenting).

I dissent because I do not think it is appropriate to legalize the procedure on the basis of a condition which was unknown to the officer and on a ground he did not consider.

The procedure is justified here on the basis of Iowa Code section 321J.6(1)(b) (1989), which allows implementation of the procedure when a person is thought to have operated a motor vehicle while intoxicated and:

[t]he person has been involved in a motor vehicle accident or collision resulting in *personal injury* or death.

(Emphasis added.)

In all respect I am convinced the majority is wrong, both on the facts and the law. The record here simply cannot justify the majority's suggestion that the officer "believed that defendant was injured even though he did not see or have personal knowledge of an injury." The officer in fact stoutly and repeatedly denied any such knowledge. In his deposition he did so often enough as to belie any contention that his concession was a mere oversight or a slip of the tongue. The following questions and answers appear scattered through the officer's deposition:

Q. Okay. So, basically, you did not observe any personal injuries on her during the time you had contact with her? A. No. Sir.

. . . .

Q. Did the doctor ever indicate to you at any time prior to this [at the hospital] that she had suffered any personal injury? A. Not that I am aware of.

. . . .

Q. So you didn't see any personal injury and you had no knowledge of any personal injury that she sustained? A. That is correct.

. . . .

Q. I take it, as an accident investigator, you've seen people involved in personal injury accidents and people that have head concussions and been in shock? A. That is right.

Q. And you didn't see any of that in Ms. Hopkins? A. None that I am capable of identifying with as others.

Neither is there evidence that the driver thought she was injured or that the attending doctors thought so. The emergency room doctor merely told the officer that Hopkins was capable of consenting to or refusing the request. Indeed, prior to the filing of the majority opinion, no one concluded that the driver was injured.

Iowa Code section 321J.6(1) provides five bases for triggering the implied consent law, including the injured person ground under section 321J.6(1)(b). The officer here had ample ground to arrest the driver for the offense and invoke a procedure under section 321J.6(1)(a). He may have had grounds to consider the driver injured and to proceed under section 321J.6(1)(b). In fact he did neither. We should not patch

up the prosecution on the basis of a ground the officer did not invoke. I would affirm.

LAVORATO, NEUMAN and SNELL, JJ., join this dissent.