**Donald Franklin HENRY, Appellee,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION, Appellant.**

No. 87–914.

Supreme Court of Iowa.

July 20, 1988.

Thomas J. Miller, Atty. Gen., and Ted Metier, Asst. Atty. Gen., Ames, for appellant.

Gordon K. Darling, Jr., of Darling, Chickering & Darling, Winterset, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

In this judicial review of a driver's license revocation case, the Iowa Department of Transportation asks us to determine whether the "written request" provision of Iowa Code section 321B.4 (1985) requires a peace officer to complete an implied consent form before orally requesting an alternative chemical test.

The department revoked Donald Franklin Henry's license after he had allegedly refused both blood and urine tests for intoxication following a motor vehicle accident in which he was injured. A department hearing officer rescinded the revocation because the state trooper investigating the case had not completed an implied consent form until after orally requesting the urine test.

A reviewing officer reinstated the revocation on appeal, but the district court later upheld the original rescission. The court concluded that a peace officer must satisfy the "written request" provision of Iowa Code section 321B.4 by completing the implied consent form before, rather than after, making the oral request for an alternative test. We disagree. Consequently, we reverse the district court's judgment and remand the case to it for the consideration of issues not yet decided.

I. *Background Facts and Proceedings.*

On December 29, 1984, Henry ate dinner with his mother at their farm near Earlham. He later testified that he had drunk about a glass and a half of wine with the meal because it was a special occasion.

When they were finished eating, Henry set out for Des Moines in his truck. After leaving a service station during the trip, Henry began to feel dizzy, as he had on other occasions. He recovered, however, as he drove on, but the dizziness soon recurred. Henry felt himself losing consciousness and turned off the motor before the truck left the road and rolled over.

Henry said he only vaguely remembers a deputy sheriff or police officer at the scene of the accident and the ambulance trip to a hospital. He was treated there for a mouth injury and serious cuts. Henry later learned that he suffers from diabetes, arthritis, and cardiac problems.

A state trooper was dispatched to the hospital to investigate Henry's accident and obtain a blood test from him. *See* Iowa Code § 321B.4(1)(b). The trooper was told by a nurse and the ambulance crew that Henry might be intoxicated, so the trooper went into Henry's room and read him the implied consent advisory. The trooper, who said he could smell alcohol on Henry's breath, then requested a blood test. *See id.* Henry refused and said that he had been a police officer for twelve years and knew that a search warrant had to be presented before any chemical test could be required. Henry's claim that he had been a police officer is apparently false.

The trooper then orally requested a urine specimen, which Henry refused to give. After this refusal the trooper took apart the copies of the implied consent form and gave Henry a copy. Both the trooper's copy and Henry's indicate the request for a blood test and that Henry "refused test" and "refused to sign." Both are signed by the trooper. The trooper, however, noted the request for a urine specimen on his own copy after he had already given the other copy to Henry.

Henry testified that he does not remember his refusals or much about his conver-sation with the trooper. He said that when he left the hospital he found his driver's license missing and his copy of the implied consent form in his coat pocket.

The department revoked Henry's license because of his refusal to submit to the urine test. *See id.* at §§ 321B.4(2), 321B.13. Henry requested a hearing, *see id.* at § 321B.26, and the hearing officer rescinded the revocation because the trooper's marking of the implied consent form after orally requesting a urine test did not satisfy the "written request" requirement of section 321B.4.

The department appealed, and the reviewing officer reinstated the revocation, concluding that Henry had "understood both requests and responded in the negative" and that the "form and the testimony show that all the requirements under chapter 321B were met."

Henry then sought judicial review, *see id.* at § 321B.27, and the district court agreed with the hearing officer's original decision to rescind the revocation. Since it found that Henry had met his burden of showing that the revocation should be rescinded, the district court did not consider the other issues he had raised: whether the form of the department's notice of appeal after the hearing officer's decision and the lapse of time before the reviewing officer's decision were proper; and whether Henry's medical condition required the trooper to follow the procedure for persons incapable of consent or refusal, *see id.* at § 321B.11.

The department now argues that the district court erred by deciding that Henry did not receive a written request for the urine test as required by section 321B.4.[1] Henry, besides urging us to affirm the district court decision, contends that if the district court did err, the case must still be remanded to determine how the remaining two issues should affect the outcome.

---

1. We summarily reject the department's contention that an amendment in 1974 to then Iowa Code § 321B.3 (§ 321B.4 in the 1985 Code) removed the written request requirement, an issue the department raises for the first time here. Normally, we decline to consider issues raised for the first time on appeal. *Kroblin v. RDR Motels, Inc.,* 347 N.W.2d 430, 434 (Iowa 1984). In this instance, however, we have reviewed the statute and conclude it plainly requires a written request for an alternative test, in this case a urine test.

## II. *Scope of Review.*

In reviewing a district court decision on the validity of an agency action, we decide only whether the district court has correctly applied the law. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987). The district court itself acts in an appellate capacity to correct errors of law on the part of the agency. *Id.* When we review such action by the district court, we merely apply the standards of section 17A.19(8) to determine whether our conclusions are the same as those of the district court. *Id.* If the conclusions are the same, we affirm; otherwise we reverse. *Downing v. Iowa Dep't of Transp.*, 415 N.W.2d 625, 627 (Iowa 1987).

## III. *Section 321B.4 Requirement for Written Request.*

Iowa Code section 321B.4 provides in pertinent part:

1. Any person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle [while intoxicated] is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of drugs, subject to this section. The withdrawal of the body substances and the *test or tests shall be administered at the written request of a peace officer....*

....

2. The peace officer shall determine which of the four substances, breath, blood, saliva, or urine, shall be tested. Refusal to submit to a chemical test of urine, saliva or breath is deemed a refusal to submit, and section 321B.13 [revocation] applies. A refusal to submit to a chemical test of blood is not deemed a refusal to submit, but in that case, the peace officer shall then determine which one of the other substances shall be tested and shall offer the test.

(Emphasis added.) The district court concluded, for two reasons, that Henry had not been provided with a written request for an alternative specimen as required by this section. First, the written request form was not completed until after the oral request had already been made and refused. Second, as shown by Henry's copy, reproduced here as Exhibit A, the written copy delivered to him omitted the necessary writing relative to the alternative test.

EXHIBIT A

Unlike Henry's copy, the trooper's copy of the request for an alternative specimen, reproduced here as Exhibit B, is completed and signed by the trooper.

## EXHIBIT B

From these same facts, contrary to the hearing officer's and the district court's conclusions, the reviewing officer concluded that the written request requirement of section 321B.4 had been met. We agree with the conclusion reached by the reviewing officer.

Before we begin our analysis, we think a review of several prior cases dealing with the written request requirement of section 321B.4 would be helpful.

In *State v. Richards*, 229 N.W.2d 229 (Iowa 1975), a trooper stopped the defendant at 11:30 in the evening and placed her under arrest for OWI. On the way to the sheriff's office, the trooper explained the implied consent procedure to her and asked her if she would submit to a blood test. She ultimately agreed, and at 11:49 p.m. she was given a blood test. The trooper then took the defendant to the sheriff's office. There, he filled out an implied consent form, which included a written request that the defendant submit to a blood test. This was done about an hour after the

blood test had been given. The trooper presented the form to the defendant, asking her to sign it. She signed the form but did not check the place where she was to indicate whether she consented to or refused the test.

The State argued that the statutory provision for a written request for a blood specimen was substantially complied with when the officer presented the written request to the defendant almost an hour after she had submitted to the blood test. We disagreed and said that

[t]he statute requires the request to precede submission to the test. It requires the request to be in writing. A written request which follows the test is untimely; it does not comply with the statute.

*Richards*, 229 N.W.2d at 233.

Several years later we confronted a similar issue in *State v. Meissner*, 315 N.W.2d 738 (Iowa 1982). This time a trooper read the defendant, from the implied consent

form, the request for a blood test. The defendant refused to submit. Thereafter the trooper, using the same form, read the request for a specimen of urine. Again, the defendant refused.

The defendant argued that the refusals could not be used against him because he requested assistance of counsel before the trooper requested blood and urine tests. The defendant argued that the request for specimens remained oral and did not become written until the form was physically handed to him. In rejecting this argument, we said:

> We think there was compliance with the [statutory] requirement that the demand for specimens be in writing. In making the demand the officer told defendant he was reading from a paper. He did so; there is no suggestion the paper was misread. Defendant could see the paper. There was nothing wrong with the form of the demand.

*Meissner*, 315 N.W.2d at 740.

Analogizing to jury instructions, which are required to be in writing under Iowa Rule of Civil Procedure 196, we pointed out that the court nevertheless instructs by reading the instructions to the jury. *Id.* at 741. We emphasized that "[n]either the implied consent procedure nor instructing of the jury is required to be reported. In each situation the writing provides a record of the relevant communication. This promotes accuracy and furnishes a record for subsequent review." *Id.*

In *Meissner* we also distinguished *Richards*. We pointed out that in *Richards* "an effort was made to reconstruct the record after the fact. We held this could not be done. A strict construction of the statute required the written request to exist before it could be said to have been made." *Meissner*, 315 N.W.2d at 741 (citation omitted).

We think the facts here more closely parallel those in *Meissner* than those in *Richards*. The trooper told Henry who he was and that he was there to obtain a blood test. As in *Meissner,* the trooper read the implied consent advisory and the request for a blood specimen. He then asked Hen-

ry if he would consent. Henry refused. Both Exhibit A (Henry's copy) and Exhibit B (the copy retained by the trooper) show the time and date of the request for a blood specimen and the trooper's signature. It is not clear whether the trooper completed the request form before, during, or after his oral request for the blood.

At this point the trooper asked Henry for a urine test, which Henry likewise refused. From the writing that appears on the request for alternative specimen portion of Exhibits A and B, it appears the trooper gave Henry Exhibit A before he completed the request for alternative specimen portion of the form. It also appears the trooper completed the request for alternative specimen portion of Exhibit B *after* he asked Henry for a urine specimen.

Contrary to the district court's finding, we hold that the implied consent procedure was not tainted or flawed by the timing of the completion of the request form or by the trooper's failure to complete and sign Henry's copy. The primary purpose for the statutory requirement of a written request is to provide a record of the relevant communication for subsequent review. *See Meissner*, 315 N.W.2d at 741. Here, a written record of the oral request and the refusal was contemporaneously made. We also note there is no statutory requirement that the written request be completed and signed *before* the oral request is made. In our view the aim of the statute was fulfilled. *See* Iowa Code § 4.6(1).

In light of these facts, we find the district court's construction of the statute erroneous.

## IV. *Disposition.*

As we said earlier, the district court did not decide whether the department's intra-agency notice of appeal was in proper form, or whether the lapse of time before the reviewing officer's decision was proper. Nor did it decide whether Henry was capable of consenting or refusing, an issue the department likewise did not decide.

In view of our holding in division III of this opinion and the unresolved issues, the

decision of the district court is reversed. We remand the case to the district court for a determination of the notice of appeal issues because these issues were not briefed and argued in this court. *See Barnes v. Iowa Dep't of Transp.*, 385 N.W.2d 260, 263 (Iowa 1986). If the court decides these issues in favor of the department, it is directed to remand the case to the department for findings of fact and conclusions of law on the remaining issue regarding Henry's ability to consent to or refuse testing.

REVERSED AND REMANDED WITH DIRECTIONS.