Shirley FREELAND, Appellant,

v.

EMPLOYMENT APPEAL BOARD and
Hawkeye Institute of Technology,
Appellees.

No. 91–616.

Supreme Court of Iowa.

Oct. 21, 1992.

C.A. Frerichs and Thomas P. Frerichs, Waterloo, for appellant.

William C. Whitten, Des Moines, for appellee Employment Appeal Bd.

Jaki K. Samuelson of Whitfield, Musgrave & Eddy, Des Moines, for appellee Hawkeye Institute of Technology.

ANDREASEN, Justice.

As a result of agency action, Shirley Freeland was denied unemployment benefits. She petitioned the district court for judicial review. The court found Freeland had been afforded procedural due process in the administrative proceedings and that her misconduct had been sufficiently established. The court entered judgment affirming the agency action. On appeal, the court of appeals reversed. We granted further review and now vacate the decision of the court of appeals and affirm the district court.

## I. Background.

Freeland was employed as a secretary by Hawkeye Institute of Technology (Hawkeye Tech). In January 1990 she worked for Dr. Glen Pedersen, Vice President of Vocational Technical Education Division. At Pedersen's request, she collected money from coworkers and ordered flowers from Design Studios for two Hawkeye Tech employees who had been hospitalized. In February 1990, the florist mailed a statement for the flowers to Freeland at the Hawkeye Tech office address. The flower bill was not paid. The florist mailed a statement each month thereafter to Freeland in care of Hawkeye Tech. After three or four months the florist called Freeland at work and inquired about payment. Freeland said she would take care of it but no payment was made.

On June 18, 1990, Dr. John Hawse, president of Hawkeye Tech, was told by his secretary that Hawkeye Tech had a flower bill that had not been paid. He called Design Studios and talked to the owner Joan Kerns. Kerns told him two flower arrangements had been ordered by Freeland to be billed to Hawkeye Tech, attention to her. Hawse then requested Pedersen and Ron Kuhlman, director of personnel, to investigate the matter.

Pedersen asked Freeland to come to his office. When asked about the flower fund money Freeland admitted she had used the money to purchase prescription drugs for her husband. Pedersen suggested he considered the conversion of money entrusted to her as theft. When faced with the possibility of theft charges, termination of her employment, or resignation, Freeland submitted her written resignation.

The following day Freeland, by letter, advised Pedersen that she was withdrawing her resignation. The letter was referred to the president. Hawse notified Freeland that the resignation had been accepted and her request to withdraw would not be honored. Freeland then filed her claim for unemployment insurance benefits with Job Service.

The Job Service claims representative found Freeland had been compelled to resign when given the choice of resigning or being discharged. Under these circumstances, her resignation would not be considered a voluntary leaving. No disqualifi-

cation was imposed; Freeland's claim for unemployment compensation was allowed.

Hawkeye Tech appealed from this initial determination. Following a contested case hearing, an administrative law judge (ALJ) found Freeland's acts and omissions constituted misconduct justifying denial of unemployment benefits.

On appeal, the Employment Appeal Board affirmed the decision of the ALJ. The decision, with its findings of fact and conclusions of law, were incorporated into the agency's decision. Freeland's application for rehearing was denied by the agency.

Freeland then filed a petition for judicial review in district court. Following the district court's judgment, which affirmed the agency action, Freeland appealed. We transferred the case to the court of appeals.

The court of appeals reversed, finding the agency's determination of misconduct was not supported by substantial evidence. The agency and employer sought, and we granted, further review.

There are two primary issues raised on appeal. First, was Freeland given sufficient notice that her misconduct was an issue in the contested case hearing before the ALJ. Second, was there substantial evidence to support the agency's finding of misconduct.

## II. *Notice.*

■ Freeland claims it was a denial of due process for the ALJ to inject the issue of "disqualifying misconduct" into the hearing without prior notice. When constitutional issues are raised in a judicial review proceeding, we make an independent evaluation of the totality of the evidence; our review is de novo. *Consumer Advocate v. Commerce Comm'n,* 465 N.W.2d 280, 281 (Iowa 1991).

■ Parties to an administrative hearing are entitled to notice and the opportunity to defend. *Carr v. Iowa Employment Sec. Comm'n,* 256 N.W.2d 211, 214 (Iowa 1977). The hearing before the ALJ must be conducted pursuant to the provisions of Iowa Code chapter 17A relating to hearings for contested cases. Iowa Code § 96.6 (1989). In such contested cases, all parties shall be afforded an opportunity for hearing after reasonable notice in writing. Iowa Code § 17A.12. The notice must include a reference to the particular sections of the statutes and rules involved and a short and plain statement of the matters asserted. Iowa Code § 17A.12(2)(c) and (d).

Here, Job Service gave notice to the parties that Hawkeye Tech had appealed the action taken by Job Service. The notice identified the involved statutes as sections 96.5(1) and 96.5(2)(a). The notice also stated: "The following matters have been asserted ... 1. WHETHER THE CLMT. WAS COMPELLED TO RESIGN BY THE EMPLOYER." The notice advised the parties that the hearing would. be conducted by an ALJ and that the purpose of the hearing is to receive evidence from the parties to enable the ALJ to determine if the action taken by Job Service was correct. Both Freeland and Hawkeye Tech were represented by legal counsel at the hearing.

Prior to receiving evidence the ALJ stated:

> As I make my decision in this case I'll be concerned with the provisions of Iowa Code section 96.5–1 and subsection 2–A. The important language in subsection 1 is that an individual shall be disqualified for benefits if the individual has left work voluntarily without good cause attributable to the individual's employer; while in subsection 2–A the pertinent language is that an individual shall be disqualified for benefits if the individual has been discharged for misconduct in connection with the individual's employment.

The employer called Kerns, Pedersen, Hawse, and Kuhlman as witnesses. Freeland testified on her own behalf. Evidence relating to Freeland's misconduct was received. After all evidence had been taken, Freeland's counsel raised, for the first time, that his client would be denied due process of law if the ALJ considered any issue other than whether there was a voluntary quit.

The due process issue was addressed by the ALJ. In his decision it is stated:

> He [Freeland's attorney] argued that the narrative of the matter asserted on the hearing notice listed only the issue of whether the claimant was compelled to resign. This argument fails to take into account the fact that both the law section concerned with quits and that concerned with discharges was listed on the notice. Furthermore, Iowa Administrative Code section 345–6.2(5)(d)[1] states in pertinent part: "An issue stated in terms of a voluntary leaving or discharge shall be construed generally to be a single issue concerning the separation from employment so that evidence on either both kinds of separation may be received." Considering these factors and considering that the claimant has been represented by licensed attorney since at least the latter part of July 1990, the denial of due process argument is rejected.

The agency denied Freeland's application for rehearing that again raised the due process issue. On judicial review, the district court found Freeland was adequately advised of the claimed misconduct and was able to, and in fact did, defend against that claim at the time of the hearing before the ALJ. Upon our de novo review we reach the same conclusion.

### III. *Misconduct.*

Iowa law disqualifies employees from receiving unemployment compensation for various reasons. *See* Iowa Code § 96.5. Misconduct is specifically listed as a cause for disqualification. Iowa Code § 96.5(2).

■ The term misconduct is not defined in the statute. However, misconduct is defined by agency rules. It is defined, in part, as a deliberate violation or disregard of standards of behavior that the employer has the right to expect of employees. 345 Iowa Admin.Code 4.32(1)(a). We have held the agency rule definition is an accurate

reflection of legislative intent. *See, e.g., Kleidosty v. Employment Appeal Bd.,* 482 N.W.2d 416, 416–17 (Iowa 1992); *Larson v. Iowa Dep't of Job Serv.,* 474 N.W.2d 570, 571–72 (Iowa 1991).

■ Our review is on error, and the agency's decision is binding on us if it is supported by substantial evidence and not based upon incorrect conclusions of law. Iowa Code § 17A.19(8)(e), (f); *Larson,* 474 N.W.2d at 572. Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings. *Sallis v. Employment Appeal Bd.,* 437 N.W.2d 895, 896 (Iowa 1989). We look only to the final agency decision and determine whether the record supports the agency's ruling. *Aluminum Co. v. Employment Appeal Bd.,* 449 N.W.2d 391, 394 (Iowa 1989). In reviewing a district court decision on the validity of agency action, we decide whether the district court has correctly applied the law. The district court itself acts in an appellate capacity to correct errors of law on the part of the agency. *Henry v. Iowa Dep't of Transp.,* 426 N.W.2d 383, 385 (Iowa 1988).

Freeland argues, and the court of appeals concluded, there was not substantial evidence to support a finding that Freeland's termination was a result of misconduct. The court of appeals found:

> While Freeland was asked by her supervisor to collect for the flowers, it was not a duty as an employee. The flowers were not sent by the employer, but were paid for from personal funds of fellow coemployees. Freeland used her personal credit for the purchase of the flowers. She was responsible for payment of the bill and ultimately paid it.

In contrast, the agency, by incorporating the ALJ's findings and conclusions, found:

> The claimant established the flower fund upon the instruction of her supervisor. The fund was for the benefit of her coworkers. The money collected for the

---

**1.** Iowa Administrative Code 345–6.14(4) now provides: "The hearing shall be confined to the evidence relevant to the issue or issues stated on the notice of hearing.... Notwithstanding, voluntary quits and discharges generally shall be

construed to constitute the single issue of separation from employment so that evidence of either or both types of separation may be received in a single hearing."

fund was from other coworkers. Ms. Freeland took the money for her own use without notice and without permission. She withheld this information from her supervisor and coworkers until denial was futile.

Considering especially the length of the deception, the administrative law judge finds that the claimant's acts and omissions constitute misconduct. While short-term use of the funds so entrusted to her with prompt repayment may have constituted merely an isolated instance of poor judgment, the claimant's continued failure to rectify the situation created a continuing act of misconduct extending from early 1990 until the date of her separation. This constitutes misconduct to the degree justifying the denial of job insurance benefits.

The claimant was compelled to resign effective June 18, 1990, under circumstances constituting job related misconduct.

Upon judicial review, the district court found Hawkeye Tech maintained a policy of sending flowers to employees who were hospitalized to promote good personnel relations. The court concluded it did not matter whether the flower bill was personal in nature to Freeland or the obligation of Hawkeye Tech. The image of Hawkeye Tech was damaged by allowing the bill to remain unpaid for six months. It was in Hawkeye Tech's interest to promote good interpersonal relationships between its employees. Dissension and mistrust could easily set in if an individual such as Ms. Freeland could collect money that was to be used for one purpose and then convert it to her own personal use.

██ In determining if there is substantial evidence to support the agency finding, the question is not whether the evidence might support a different finding, but whether there is substantial evidence to support the finding actually made by the agency. *Aluminum Co.*, 449 N.W.2d at 394. Where the evidence is in conflict or where reasonable minds might disagree about the conclusions to be drawn from the evidence, the court is bound to accept the board's findings. *Id.* We take all record evidence into account in our review and grant appropriate deference to the board's expertise. *Id.* The court must broadly and liberally apply the board's findings in order to uphold rather than defeat the decision. *Id.* The board's factual findings are binding on appeal unless a contrary result is demanded as a matter of law. *Id.*

██ Freeland urges the flower fund incident was personal and was not job related. There is substantial evidence in the record that Pedersen directed Freeland to collect money from coemployees to purchase the flowers. The card that was delivered with the flowers stated the flowers were from vocational technical office department heads. Freeland testified that at the time she collected the money they gave her, she had no intention of using it for the purchase of prescriptions for her husband. When Hawse called the florist, he was told there was a bill for Hawkeye Tech from some time in January and that the bills had been sent to Hawkeye Tech to the attention of Freeland. The florist told Hawse that she was surprised that Hawkeye Tech would have a bill outstanding so long because they are more prompt in paying their bills. Other flowers ordered by Freeland for personal use were billed to her home address.

Freeland argues the delay in payment did not cause any harm to her employer. We have recognized an employee's misconduct may justify termination and the denial of unemployment benefits where the employee's conduct had not caused any immediate harm to the employer. *Flesher v. Iowa Dep't of Job Serv.*, 372 N.W.2d 230, 234 (Iowa 1985). The agency's conclusion that the misconduct of Freeland was job related is supported by evidence. The agency can reasonably infer that the use of money received from fellow employees would constitute a breach of trust that would affect interpersonal employee relationships and the reputation of the employer.

We therefore vacate the decision of the court of appeals and affirm the district court judgment.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.

All justices concur except SCHULTZ, J., who dissents and is joined by CARTER and SNELL, JJ.

SCHULTZ, Justice (dissenting).

I would agree with the court of appeals' conclusion that there was not substantial evidence to support the agency's conclusion of misconduct. I cannot agree there was substantial evidence that this area public college had its image tarnished by the appellant or that appellant created dissension and mistrust among employees.

Rather, appellant was assigned a task outside her responsibility as an employee and she assumed a debt for flowers rather than promptly pay the bill. This does not amount to a willful or wanton disregard of her employer's interest. *See Flesher v. Iowa Dep't of Job Serv.*, 372 N.W.2d 230, 233 (Iowa 1985). I would affirm the court of appeals decision.

CARTER and SNELL, JJ., join this dissent.