Barry Lee McMAHON, Appellee,

v.

IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION, Appellant.

No. 93–797.

Supreme Court of Iowa.

Sept. 21, 1994.

Bonnie J. Campbell, Atty. Gen., David A. Ferree, Sp. Asst. Atty. Gen., and Mark Hunacek, Asst. Atty. Gen., for appellant.

Carter Stevens of Beecher, Rathert, Roberts, Field, Walker & Morris, P.C., Waterloo, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL and TERNUS, JJ.

SNELL, Justice.

The Iowa Department of Transportation (DOT) appeals from the Black Hawk County District Court's decision to reverse an administrative law court's revocation of Barry Lee McMahon's (McMahon) personalized license plates. The district court held that the DOT's procedure for determining a revocation of personalized license plates when they carry a sexual connotation was arbitrary and capricious. McMahon asserts that the DOT's procedure is violative of equal protection because it distinguishes between offensive plates based on whether they are grounded on a legitimate purpose. On appeal, the DOT argues that its procedure for approving and revoking personalized license plates is reasonable and the equal protection clause grants it broad discretion in pursuing legitimate state interests. We reverse.

I. Factual Background

In 1986, the DOT issued personalized license plates to McMahon which read "3MTA3." When viewed in a mirror, the plates read "EATME." The DOT subsequently received two complaints about the plates, one through the office of the county treasurer and another through the Iowa State Patrol.

On October 24, 1991, the DOT sent a letter to McMahon giving him notice that it had received a complaint about his license plates and asking him to provide a legitimate reason for requesting the character configuration. McMahon informed the DOT that the configuration stood for a Wisconsin company named "3 Men Technical Associate to the 3rd Power." On December 31, 1991, the DOT wrote McMahon another letter informing him that it had determined that the complaint was valid and asking him to voluntarily surrender his plates to the local county treasurer. The DOT noted in this letter that if McMahon was uninterested in acquiring new personalized plates, it would refund the vanity plate fee since the DOT had erred originally in issuing the plates.

On February 7, 1992, the DOT sent McMahon an official notice revoking his registration certificate and license plates because it had determined the plates were offensive. McMahon requested an administrative hearing. The administrative law judge held in McMahon's favor on the ground that the DOT's reason for revoking the license, as embodied in the February 7 notice, was too vague.

On May 21, 1992, the DOT sent McMahon another official notice which revoked the plates because, when viewed in a mirror, the plate's characters conveyed a message with a sexual connotation. Specifically, the DOT quoted from a slang dictionary defining the phrase in explicit and offensive sexual terms. *See* Johnathan Green, *Dictionary of Contemporary Slang* (1985).

After a second administrative hearing, requested by McMahon and held on July 28, 1992, the administrative law judge held in the DOT's favor. The judge found that the plates had a sexual connotation and therefore revocation of the plates was proper. This decision was affirmed on administrative appeal.

McMahon subsequently petitioned for judicial review. While this petition was pending, McMahon filed two documents entitled "Request for Admissions" and "Application to Present Additional Evidence." By these two documents, McMahon sought to present evidence that the DOT had previously issued license plates reading "LICKHER" and "3MTA30."

The DOT responded to McMahon's requests by asserting that the law does not provide litigants with a right of discovery in judicial review actions and does not allow courts to consider evidence other than that in the administrative record. However, subject to objection and in the interests of expediting the matter, the DOT admitted the issuance of the named license plates.

Upon judicial review, the district court referred specifically to the additional evidence McMahon presented in his post-administrative adjudication documents, and held in his favor. The court held that the method the DOT employs to determine whether to revoke a license is arbitrary and unreasonable since the DOT may fail to revoke an offensive license plate if it has a legitimate alternative meaning.

## II. Standard of Review

When a party appeals a district court review of an agency ruling, we will not disturb the agency's findings of fact if substantial evidence supports them. Iowa Code § 17A.19(8)(f) (1993); *Ginsberg v. Iowa Dep't of Transp.*, 508 N.W.2d 663, 664 (Iowa 1993). "Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings [as the agency]." *Freeland v. Employment Appeal Bd.*, 492 N.W.2d 193, 196 (Iowa 1992). In addition, we review the district court's legal determinations for misapplication of the law. *Freeland*, 492 N.W.2d at 196; *Henry v. Iowa Dep't of Transp.*, 426 N.W.2d 383, 385 (Iowa 1988). The district court itself acts in an appellate capacity to review agency determinations for legal error and we apply the standards of section 17A.19(8) to determine whether we agree with the court's conclusions. *Henry*, 426 N.W.2d at 385.

## III. Facts Outside Administrative Record

The DOT argues that the district court's reliance on evidence which the administrative law judge did not consider was error since statutes and case law mandate that the court act in an appellate capacity when reviewing agency decisions. McMahon argues that even though it was improper for the district court to consider the additional evidence, a remand back to the agency would have wasted time since the additional evidence would not have changed the administrative law judge's decision.

It was clearly improper for the district court to consider the additional evidence. Iowa Code section 17A.19(7) (1993) provides for two different district court treatments of evidence the parties wish to present for the first time after an agency has entered a final decision. If the case involves judicial review of agency action in a "contested case," "a court shall not itself hear any further evidence with respect to those issues of fact whose determination was entrusted by ... statute to the agency in that contested case proceeding." *Id.* In such cases, the law limits court review to the agency's record. *Heartland Lysine v. Department of Revenue and Fin.*, 503 N.W.2d 587, 588 (Iowa 1993); *Mary v. Iowa Dep't of Transp.*, 382 N.W.2d 128, 131 (Iowa 1986); *Maschino v. Geo. A. Hormel & Co.*, 372 N.W.2d 256, 258 (Iowa 1985). If the case involves judicial review of "other agency action," the reviewing court may consider "such evidence as it deems appropriate." Iowa Code § 17A.19(7); *Krause v. State ex rel. Iowa Dep't of Human Servs.*, 426 N.W.2d 161, 165 (Iowa 1988).

A "contested case" is "a proceeding in which 'the legal rights, duties or privileges of a party are required by ... statute to be determined by an agency after an opportunity for an evidentiary hearing.' " *Purethane, Inc. v. Iowa State Bd. of Tax Review*, 498 N.W.2d 706, 708 (Iowa 1993) (quoting Iowa Code § 17A.2(2)). In cases involving revocation of an individual's license plates, a permitee is entitled to an evidentiary hearing in which an administrative law judge sits as finder of fact and renders a determination regarding the person's legal rights. *See* 761 Iowa Admin.Code 400.56(321) (1994). Therefore, the case at issue is a "contested case" within the definition of Iowa Code chapter 17A.

Section 17A.19 provides a specific mechanism for the admission of additional evidence following a final agency determination. The section requires a party to apply to the district court for admittance of such evidence before the date set for consideration of the

party's petition for judicial review. Iowa Code § 17A.19(7). If the court determines that the additional evidence is material and the party had good reason for failing to present the evidence before the agency, section 17A.19(7) requires the court to remand the matter to the agency for a new determination. *Id.*

■ This statutory mandate does not allow a reviewing court itself to consider evidence the parties failed to present before the agency when the matter is a "contested case." The district court acted improperly in considering this additional evidence. Although the court erred, we do not need to remand this matter to the district court for further proceedings. *Mary,* 382 N.W.2d at 131. Instead, we will review the agency action as the district court should have pursuant to sections 17A.19(7) and (8). *Mary,* 382 N.W.2d at 131.

■ In response to McMahon's request for admission of the additional evidence, we find that the existence of license plates reading "LICKHER" and "3MTA30" is not material to a determination of this matter. *See* Iowa Code § 17A.19(7); *Avery v. Peterson,* 243 N.W.2d 630, 634 (Iowa 1976). Moreover, no showing was made to justify the failure to present this evidence at the agency hearing. *See Hollensbe v. Iowa Dep't of Job Service,* 418 N.W.2d 77, 80 (Iowa App.1987). Therefore, remand to the agency is not necessary.

### IV. DOT Revocation Policy and Procedure

Iowa Code section 321.34(5) provides the statutory authority for the issuance of personalized license plates. The DOT rules governing special registration plates are located at 761 Iowa Admin.Code 400.41 (1994). Rule 400.41(2)(d)(5) provides:

> No combination of characters shall be issued which is sexual in connotation; defined in dictionaries as a term of vulgarity, contempt, prejudice, hostility, insult, or racial or ethnic degradation; recognized as a swear word; considered to be offensive; or a foreign word falling in any of these categories.

Rule 400.41(7) provides that "[s]pecial registration plates shall be revoked if they have been issued in conflict with the laws governing their issuance or this rule." 761 Iowa Admin.Code 400.41(7).

The Office of Vehicle Registration (OVR) is the specific body within the DOT that issues and reviews registrations. The OVR has a specific procedure by which it determines whether a license symbol configuration is suitable for issuance or revocation after initial approval. When a vehicle owner applies for a personalized plate, the OVR staff reviews the request and if it finds a requested plate in potential violation of rule 400.-41(2)(d)(5), it is brought to the attention of the director of the OVR. The director then approves or denies the plate after considering its purported message. If the OVR is uncertain whether the message is violative of rule 400.41(2)(d)(5), it contacts the applicant to clarify the meaning of the requested message. In addition, the OVR refers to Johnathan Green, *Dictionary of Contemporary Slang* (1985), as an aid in determining whether a message is sexual in connotation or otherwise offensive. A license plate may also come under the review of the OVR if a member of the public complains about its message.

If the OVR determines that a plate identification carries a sexual or otherwise offensive connotation, it denies those configurations which would obviously violate the rule against offensive messages. In cases in which the identification is not obviously offensive, the OVR engages in a weighing process of the public interest to be protected from offensive messages versus the private interest of the bearer of the plates in having the particular configuration displayed. In weighing these interests, a finding that the bearer of the plates had a legitimate reason for the message weighs strongly in favor of allowing the individual to keep the particular identification.

In questionable cases, after engaging in the weighing of interests, the OVR may approve the issuance of the particular identification, but will notify the bearer of the plates that if the OVR receives complaints, it will engage in new consideration of the message.

Public complaints are therefore a gauge by which the OVR may determine how offensive a particular plate is to the public. Complaints serve to tip the scale in favor of revocation of a questionable plate.

## A. DOT Policy and Procedure

### 1) Arbitrary and Capricious

McMahon argues that the DOT's decision to revoke his license was arbitrary and capricious. He asserts that since the OVR may allow an individual to keep an identification with an offensive connotation if it carries a legitimate meaning, the OVR's review methodology is arbitrary. The DOT argues that the OVR's procedure is not arbitrary because it is reasonable to consider both the interests of the public and the plate holder when determining whether to revoke a license plate.

■ An administrative agency decision constitutes an abuse of discretion only if it is clearly unreasonable, lacks rationality, and is clearly against reason and evidence. *Frank v. Iowa Dep't of Transp.*, 386 N.W.2d 86, 87–88 (Iowa 1986). This standard grants agencies broad discretion to determine their affairs.

■ The DOT's procedure for reviewing personalized license plates is reasonable and rational. Both McMahon and the district court suggest that the only time the DOT will review an offensive plate is after a member of the public complains. This is contrary to the clear testimony of the director of the OVR.

The OVR in fact reviews personalized plate applications when they are made and may disallow a particular request with or without a complaint from the public. In borderline cases, the OVR may issue the plate and further review it if the public complains. Acting upon a public complaint is a reasonable way of determining whether a questionable plate is offensive to the public. It is therefore reasonable and rational for the DOT to weigh a public complaint heavily in favor of revocation of particular plates.

The DOT has established a logical and rational method of weighing the interests of the public and individuals in determining whether it should allow a particular license request. In borderline cases, the DOT may rationally decide that the interests of an individual in keeping a license identification outweighs the interest of the public in being shielded from the message. Even if the process results in a small percentage of plates carrying offensive messages, this does not render the DOT's procedure arbitrary. *See Katz v. Department of Motor Vehicles,* 32 Cal.App.3d 679, 108 Cal.Rptr. 424, 429 (1973). The DOT did not abuse its discretion in revoking McMahon's license. It received two public complaints about the sexual connotation of the plates and failed to receive a counterbalancing explanation that outweighed the offensiveness to the public.

### 2) Equal Protection

McMahon argues that in addition to being arbitrary and capricious, the DOT's process for revoking his license plates violated his constitutional right to equal protection since there is no rational basis for the DOT's revocation policy. The DOT asserts that its policy did not violate McMahon's equal protection rights since the process of weighing individual versus public interests bears a rational relationship to legitimate state interests.

■ Although the parties argued this issue below, the district court did not reach this issue and instead based its decision on the rationale that the DOT's procedure was arbitrary and capricious. Even though the district court did not review this issue, since the parties raised it below and have fully briefed the matter, we will address it here. *See Barnes v. Iowa Dep't of Transp.*, 385 N.W.2d 260, 263 (Iowa 1986).

■ In cases, such as this, which do not involve a fundamental right or suspect classification, equal protection analysis affords governmental bodies broad discretion in pursuing legitimate governmental interests. *See Avery,* 243 N.W.2d at 633. The individual asserting a violation of equal protection rights carries the burden of showing the classification "clearly, palpably and without doubt infringes on the constitution; and every reasonable doubt will be resolved in

favor of constitutionality." *Id.* We apply a rational basis test in reviewing the classification. Under this test, the complainant must negate every conceivable basis which may support the classification and the classification must be sustained unless it is patently arbitrary and bears no relationship to a legitimate governmental interest. We will uphold the classification if any state of facts reasonably can be conceived to justify it.

*Railway Express Agency v. People of the State of New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949), exemplifies the breadth of discretion equal protection analysis allows a governmental body when no fundamental right or suspect class is at stake. *Railway* involved a New York City traffic regulation which permitted advertisements on vehicles only if the advertisement was that of the owner of the vehicle. The regulation forbade vehicle owners from placing other companies' advertisements on their vehicles. Companies and individuals who had been convicted for violating the regulation challenged it on the ground that the distinction had no relation to the state purpose of eliminating the presence of distractions in traffic.

The Court held that the regulation's distinction did not violate equal protection because the classification related to the city's interest in eradicating traffic problems. In response to the argument that the regulation violated equal protection because it allowed even potentially greater distractions to remain on the road than those it prevented, the Court stated "[i]t is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Id.,* 336 U.S. at 110, 69 S.Ct. at 466, 93 L.Ed. at 539.

In the matter at hand, the state's purposes are twofold: (1) promoting individuals' desires to choose their own license plate identifications; and (2) protecting the public from offensive messages. The DOT's method for determining whether a particular plate's message should be allowed is a rational way of promoting these two legitimate objectives. The distinction between an acceptable symbol configuration that also may be offensive and a message which is only

meant to offend is not patently arbitrary. The DOT has not overstepped the broad discretion which the equal protection clause grants it in carrying out its legitimate objectives.

The decision of the district court is therefore reversed.

**REVERSED.**