# IN THE COURT OF APPEALS OF IOWA

No. 24-0697
Filed February 5, 2025

**ARBOR COURT HEALTHCARE, LLC,**
    Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.


    Arbor Court Healthcare, LLC appeals the district court's order affirming the final decision in its administrative appeal before the Iowa Department of Health and Human Services. **AFFIRMED.**


    Rebecca A. Brommel and Joshua D. Hughes of Dorsey & Whitney LLP, Des Moines, for appellant.

    Brenna Bird, Attorney General, and Breanne A. Stoltze, Assistant Solicitor General, and Tyler Grimm and Patrick Valencia, Assistant Attorneys General, for appellee.


    Heard by Greer, P.J., and Langholz and Sandy, JJ.

**SANDY, Judge.**

This appeal arises from the district court's judicial review of an administrative agency action under Iowa Code section 17A.19 (2023). Arbor Court Healthcare, LLC (Arbor Court) appeals the district court's order affirming the final decision of the Iowa Department of Health and Human Services (HHS). HHS denied Arbor Court's request to use the "short period cost report"[1] process in relation to the setting of Arbor Court's Medicaid reimbursement rates following its acquisition of an existing Medicaid-certified nursing facility. Arbor Court administratively appealed the denied request and in a contested case proceeding, HHS affirmed the initial denial. Arbor Court then requested judicial review. The district court determined that HHS acted as required by law and that Arbor Court established no right to relief. Arbor Court contends that HHS's determination should be reversed under the Iowa Administrative Procedure Act (IAPA). We affirm the district court's order.

## I. Background Facts and Proceedings

### A. Legal Background on Medicaid Cost Reporting

To provide some context for the facts here, we must first examine how HHS reimburses Medicaid-eligible nursing facilities in Iowa and the ways in which H.F. 891 affects that process. *See* H.F. 891, 89th G.A. 1st sess., § 31(1)(a)(1)(a); 2021 Iowa Acts ch. 182, § 31(1)(a)(1)(a). Iowa nursing facilities often contract with HHS

---

[1] The parties use this term to refer to HHS's practice of implementing an informal policy of permitting Medicaid-certified nursing facilities to submit a cost report documenting three months of operation costs following a change of ownership. Those "short period cost reports" serve as the basis for HHS's recalculation of a facility's Medicaid reimbursement rates following a change of ownership. Further explanation will follow below.

to receive payment for the care they provide to such facility's Medicaid-eligible residents. HHS sets a per diem rate that determines that compensation. *See* Iowa Admin. Code r. 441-81.6(4). HHS calculates the per diem rate, in part, through an assessment of the facility's operating costs. HHS assesses the facility's operating costs through the costs reported in the facility's required annual cost report. *See id.* r. 441-81.6(3). For most facilities, that report is due by the end of the fifth month following the end of the facility's fiscal year. *Id.* In July of every odd-numbered year, HHS uses those reports to update the per diem compensation rates for most facilities—a process referred to as "rebasing." *See id.* r. 441-81.6(4).

In order to adjust to changes in the Medicaid average case-mix index, rate are adjustments are conducted each quarter. *See id.* A case-mix index is "a numeric score within a specific range that identifies the relative resources used by similar residents and represents the average resource consumption across a population or sample."[2] *Id.* r. 441-81.1. These new rates are provided to the facilities through quarterly rate letters which describe the updated per diem compensation rate and how that rate was calculated.

When a nursing facility is sold to a new owner, that "new owner shall continue to be reimbursed using the previous owner's per diem rate adjusted quarterly for changes in the Medicaid average case-mix index." *Id.* r. 441-81.6(15). But often the facility's costs will increase because of costs associated with the acquisition.

---

[2] The "Medicaid average case-mix index" is "the simple average, carried to four decimal places, of all resident case-mix indices where Medicaid is known to be the per diem payor source on the last day of the calendar quarter." Iowa Admin. Code r. 441-81.1.

As a result, HHS had adopted an informal policy of permitting such facilities to submit a "short period cost report" documenting three months of operation costs following the change of ownership. HHS would subsequently rebase rates using only the costs incurred under new ownership. The record does not contain explicit authority for that practice, but the administrative law judge cited rule 441-81.6(13) as a possible source of authorization. *See id.* r. 441-81.6(13) ("The department, in its sole discretion, may reopen a review of a financial and statistical report at any time."). He reasoned that "HHS's action could be rationalized into permissibility by viewing it as HHS amending the cost report of an existing facility."

### B. Iowa House File 891

H.F. 891 was signed by the governor on June 16, 2021. The relevant provisions were intended to stabilize payments to nursing facilities following COVID-19 due to the financial effects the pandemic had on those facilities. The law amended Medicaid compensation rate setting and prohibited rebasing rates in 2021:

> Notwithstanding any provision of law to the contrary, for the fiscal year beginning July 1, 2021, the department shall not rebase case-mix nursing facility rates, but shall instead reimburse case-mix nursing facilities by adjusting the nursing facility case-mix adjusted rates that were effective July 1, 2019, using the mid-points of each of the most recent cost reports submitted by the nursing facility for the period ending on or before December 31, 2018, and inflating these costs forward applying the inflation factor as determined using the latest available quarterly publication of the HCFA/SNF index, to the extent possible within the state funding, including the $19,080,860 provided for this purpose.

H.F. 891, § 31(1)(a)(1)(a). As a result, rates were not rebased in 2021 using 2020 cost reports.

Following H.F. 891's enactment, HHS published notice of the session law, announced a public comment period, and mailed notices about the change to affected facilities. And HHS's quarterly notices sent to facilities also included language about the change and advised facilities of their right to appeal compensation rates within ninety days. *See* Iowa Admin. Code r. 441-7.4(3).

### C. Arbor Court's 2020 Cost Reporting

Arbor Court operates a nursing facility in Mount Pleasant. The company acquired the facility from a prior owner on October 1, 2020. Arbor Court received compensation from HHS for the services the facility provided to Medicaid-eligible residents.

To receive such compensation from HHS, Arbor Court was required to submit its annual cost report by July 31, 2021,[3] which it timely filed on that date. Although it had the option to file a short period cost report, Arbor Court chose to file its required regular annual cost report without also filing a short period cost report because both reports would have covered the same period: October 1, 2020 through December 31, 2020. Because it believed the reports would have been duplicitous and H.F. 891 had not yet been enacted, Arbor Court would have received no financial benefit from simultaneously filing a short period cost report alongside its annual cost report.

But H.F. 891 became effective on July 1, 2021. As required by H.F. 891 and consistent with the prior notice HHS provided to nursing facilities, HHS did not use 2020 annual cost reports to rebase Arbor Court's rates effective July 1, 2021.

---

[3] Typically, the report would have been due on May 31, but the due date was extended based on the ongoing COVID-19 pandemic.

HHS continued to use a per diem compensation rate based on the facility's 2018 annual cost report data, a period during which the facility was under prior ownership. As with other facilities, HHS provided Arbor Court with a letter informing it of its right to appeal the rate within ninety days.

Arbor Court did not contact HHS in relation to the compensation rate until its accounting firm emailed HHS in January 2022. In that email the firm requested information relating to when Arbor Court could file a short period report to "improve the rate." This inquiry did not raise any challenge to Arbor Court's current rate. In response, HHS informed Arbor Court that because "the change of ownership took place in 2020 and inquiry about submitting a rate setting cost report was made in January 2022, the request is not considered to be a timely request/submission of a rate setting cost report, thus one would not be accepted in this instance."

Arbor Court first submitted its administrative appeal on September 22, 2022. A hearing was held before an administrative law judge on December 19. The administrative law judge issued a proposed decision affirming the denial of the short period cost report process, and HHS adopted the proposed decision as its final decision on June 21, 2023. In the decision, HHS decided only whether the Due Process Clause required it to provide the short period report process to Arbor Court.[4] It reasoned that "[s]ince no requirement existed for HHS to allow a short-report process as requested by Arbor Court, no as-applied due process violation occurred when HHS denied the request." And it explained that this reasoning was

---

[4] According to the decision, "At the hearing on the appeal request, the parties indicated the issue in dispute was constitutional in nature, namely whether Arbor Court was entitled to a short-form process and whether the failure to provide it created a procedural (and perhaps substantive) due-process violation."

unaffected by the passage of H.F. 891. The decision did not decide whether H.F.891 prohibited use of the process.

Arbor Court did not seek rehearing before HHS. Instead, it petitioned for judicial review of the final decision. On March 26, 2024, the district court denied Arbor Court's petition in its entirety.

Arbor Court now appeals.

## II. Standard of Review

We provide relief only "if the agency action prejudiced the substantial rights of the petitioner and if the agency action falls within one of the criteria listed in section 17A.19(10)(a) through (n)." *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017). "This court is not entitled to reweigh the evidence in a substantial-evidence review—we only determine whether substantial evidence supports the agency finding." *Jackson v. Bridgestone Ams. Tire Operations*, LLC, 973 N.W.2d 882, 887 (Iowa Ct. App. 2021). "Evidence is substantial when a reasonable person could accept it as adequate to reach the same findings." *Ludtke v. Iowa Dep't of Transp., Motor Vehicle Div.*, 646 N.W.2d 62, 65 (Iowa 2002).

We "apply the standards of section 17A.19(10) to determine whether we reach the same results as the district court." *Evercom Sys., Inc. v. Iowa Utilities Bd.*, 805 N.W.2d 758, 762 (Iowa 2011). The exact standard of review to be applied depends on the nature of the errors alleged. *See Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012). Under section 17A.19(10)(a)–(n), those possible errors include that the agency action was beyond its authority; legally erroneous; based on factual determinations unsupported by substantial evidence in the record

when that record is viewed as a whole; or otherwise unreasonable, arbitrary, capricious, or an abuse of discretion.

We review constitutional issues raised during the agency proceeding de novo. *Bonilla v. Iowa Bd. of Parole*, 930 N.W.2d 751, 762 (Iowa 2019); Iowa Code § 17A.19(10)(a). If a party disputes an agency's interpretation of a statutory provision and the agency has clearly vested authority to interpret the provision, we apply a narrow "irrational, illogical, or wholly unjustifiable" standard of review. *Brakke,* 897 N.W.2d at 530; Iowa Code § 17A.19(10)(*l*). For agency interpretations of law that the agency has not been vested with authority to interpret, we apply the less deferential correction of errors at law standard. *Iowa Dental Ass'n v. Iowa Insurance Div.,* 831 N.W.2d 138, 142–143 (Iowa 2013); Iowa Code § 17A.19(10)(c).

"When applied to test the propriety of agency action, 'arbitrary' or 'capricious' means the action complained of was without regard to the law or facts." *Bernau v. Iowa Dep't of Transp.*, 580 N.W.2d 757, 764 (Iowa 1998); Iowa Code § 17A.19(10)(n). "In reviewing a district court decision on the validity of agency action, we decide whether the district court has correctly applied the law. The district court itself acts in an appellate capacity to correct errors of law on the part of the agency." *Freeland v. Emp. Appeal Bd.*, 492 N.W.2d 193, 196 (Iowa 1992).

## III. Discussion

Arbor Court argues that HHS should have allowed it to use the short period cost report process due to the Mount Pleasant facility's 2020 change of ownership. It contends that HHS's denial of that process (1) must be reversed under various section 17A.19(10) grounds all resting on the argument that H.F. 891 did not

prohibit HHS from rebasing Arbor Court's rates based on a short period cost report, and (2) violates Arbor Court's constitutional due-process rights.

### A. Short Period Cost Report Prohibition

Arbor Court first seeks to reverse HHS's decision under several grounds of section 17A.19(10) that all rest on Arbor Court's argument that H.F. 891 did not prohibit HHS from using the short period cost report process to rebase Arbor Court's rates.[5] But Arbor Court did not preserve error on these arguments in the contested case proceeding before HHS.

On judicial review of a contested-case proceeding under chapter 17A, we can only consider issues that have been raised in and decided by the agency— not just the district court. *See Archer Daniels Midland v. Williams*, 3 N.W.3d 231, 236 (Iowa Ct. App. 2023); *KFC Corp. v. Iowa Dep't of Revenue*, 792 N.W.2d 308, 329 (Iowa 2010). This rule exists so even if the agency fails to decide an issue that was argued to it, the party must "point out the issue in a motion for rehearing" before the agency to preserve error on the issue. *KFC Corp.*, 792 N.W.2d at 329. And it matters not whether HHS has raised error preservation because the requirement to preserve error protects more "than simply the interests of the opposing party." *Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000). This "is especially so in a judicial-review proceeding, which involves

---

[5] Arbor Court argues that because H.F. 891 does not prohibit the short period cost report process, HHS's decision to deny Arbor Court that process was based on an erroneous application of H.F. 891, exceeded HHS's statutory authority, was "inconsistent with prescribed procedure and [HHS's] prior practice," was "not supported by substantial evidence" and was "the product of a decision-making process that failed to consider relevant and important matters," was "not required by law and prejudices Arbor Court's rights without sufficient justification," and was "illogical, irrational, or otherwise arbitrary and capricious."

not just judicial resources, but the interests of another branch of government that we afford respect." *Linnhaven, Inc. v. Blasdell*, No. 24-0333, 2024 WL 4619670, at *5 (Iowa Ct. App. Oct. 30, 2024) (cleaned up).

Here, HHS's final decision did not decide whether H.F. 891 prohibits use of the short period cost report process or even rely on H.F. 891 at all as a basis for its rejection of Arbor Court's request for that process. HHS decided only the single constitutional issue framed up by the parties during the contested case hearing: "whether Arbor Court was entitled to a short-form process and whether the failure to provide it created a procedural (and perhaps substantive) due-process violation." And it reasoned that the enactment of H.F. 891 was irrelevant to this issue because even before that statute, Arbor Court had no right to the short period cost report process. Because HHS decided only that the Due Process Clause does not require it provide the short period cost report process—and not that H.F. 891 prohibits it from providing that process—we cannot reverse it for making an allegedly erroneous decision that it never made in its contested case decision. After the proposed decision was issued by the administrative law judge, Arbor Court did not argue that the administrative law judge had overlooked deciding grounds for its request of the short period report process. Nor did it seek rehearing to raise these additional issues after the proposed decision was adopted in full by the agency director as the final agency decision.

Arbor Court thus failed to preserve error on—and we do not consider—any issue it argues now on appeal[6] except for its constitutional argument that due

---

[6] We do not see the argument analyzed by the special concurrence anywhere in Arbor Court's briefing on appeal, nor do we see such argument ruled upon by the

process requires HHS to provide the short period report process. *See KFC Corp.*, 792 N.W.2d at 329.

### B. Arbor Court's Constitutional Rights

Arbor Court next argues that HHS's denial of the short period cost report process was unconstitutional as applied to Arbor Court.

A party claiming a violation of procedural due process "must demonstrate entitlement to a . . . property interest that has been violated.'" *Godfrey v. State*, 962 N.W.2d 84, 114 (Iowa 2021) (citation omitted). Protected property interests "are created and their dimensions are defined not by the Constitution but by an independent source such as state law." *Bowers v. Polk Cnty. Bd. of Supervisors*, 638 N.W.2d 682, 691 (Iowa 2002) (cleaned up).

"Once a protected interest has been established, the next question is what procedural minima must be provided before the government may deprive the complaining party of the protected interest," with the procedural minima generally being "notice and an opportunity to be heard on the issue." *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 566 (Iowa 2019). And "[u]nder substantive due process, some government deprivations of life, liberty, or property may be unconstitutional regardless of the adequacy of the procedures deployed." *Id.* at 550. But substantive due process violations "[are] not easy to prove." *Blumenthal Inv. Trs. v. City of W. Des Moines*, 636 N.W.2d 255, 265 (Iowa 2001). For nonfundamental rights, substantive due process requires only "a 'reasonable fit' between

---

district court. Arbor Court never filed a motion to enlarge the district court's lack of consideration of such argument, so it is also not properly before us. *See Hill v. Fleetguard, Inc.*, 705 N.W.2d 665, 670–71 (Iowa 2005).

government purpose . . . and the means chosen to advance that purpose," *In re C.S.*, 516 N.W.2d 851, 861 (Iowa 1994) (citation omitted), with the government action requiring a rational basis, *Bakken v. City of Council Bluffs*, 470 N.W.2d 34, 39 (Iowa 1991).

Here, Arbor Court suffered no violation of its due process rights. Arbor Court failed to demonstrate a "constitutionally protected property interest in the *process* of submitting a short period cost report." No statute or rule requires HHS to permit a new owner of an existing Medicaid nursing facility to step outside the normal rate calculation process. In his thoughtful and well-reasoned proposed order—adopted by HHS as the final decision—the administrative law judge stated the following:

> [T]he underlying enabling statute for Medicaid contained in Iowa Code chapter 249A does not appear to directly address the situation of modifying the reimbursement rate for a new owner of an existing nursing facility, and the governing administrative rule that implement the enabling statute does not reference any short-report procedure. *See generally* Iowa Code ch. 249A; [Iowa Admin. Code r. 441-81.6]. What the implementing rule does state appears to foreclose the short-report process, as it again provides a new owner essentially steps into the shoes of the prior owner in terms of its rate, albeit that the next standard cost report only considers the new owner's expenses. [Iowa Admin. Code r. 441-81.6(15)] ("An existing facility with a new owner shall continue to be reimbursed using the previous owner's per diem rate[.]").

We concur with that analysis. And the IAPA contains no waiver provision requiring HHS to use the short report process. When otherwise consistent with state and federal law, the IAPA permits but does not require an agency to waive its own rules. See Iowa Code §§ 17A.1(2); 17A.9A.

No part of the agreement between Arbor Court and HHS guaranteed that Arbor Court would receive a particular rate in the future or that the method for

calculating rates would not change. Arbor Court conflates its expectation to use the short-period process with its entitlement to that process. And Arbor Court cannot rely on HHS's prior practice to buttress its claim—there was no known prior practice concerning Arbor Court's request to use short-report process more than a year after the change in ownership. As the district court observed:

> There is no evidence in the record that any other facility was allowed to submit a short period cost report or have their rates for 2021 re-based following passage of [] H.F. 891. The record indicates just the opposite: No other Iowa facility had its 2021 rates re-based using the short period cost report process. To allow Arbor Court the option of a rate re-base for the year beginning July 1, 2021, would arbitrarily extend to Arbor Court a benefit that no other facility received.

We find Arbor Court had no constitutionally protected property interest in rebasing its compensation rates using the short period reporting process. No law or policy existed entitling Arbor Court to such process. Accordingly, any as-applied constitutional due process challenge fails without establishing a property right.

We affirm the district court's order, finding the district court committed no errors of law and Arbor Court held no property right in the short report process.

**AFFIRMED.**

Langholz, J., concurs; Greer, P.J., concurs specially.

**GREER, Judge** (specially concurring).

I agree with the result the majority reaches—that the final decision of the agency should be affirmed—but I disagree with the conclusion that Arbor Court only preserved error on its constitutional challenges, as I would find that error was preserved on another argument made by Arbor Court. Even so, after considering that argument, I would not change the outcome here.

I read Arbor Court's challenges more broadly and disagree with the majority's characterization that the facility's contentions are either of a constitutional basis, which was preserved for our review, or require a determination over the application of H.F. 891, which the majority concluded was not preserved. I read one of Arbor Court's arguments to include the position that irrespective of H.F. 891, the "short period cost report" process was different and was always applied differently. Thus, Arbor Court contends that the prohibition to apply the short period cost report process was "unreasonable, arbitrary, capricious, or an abuse of discretion." Iowa Code § 17A.19(10)(n) (2023).

Submitted as an exhibit in the administrative hearing, Arbor Court pointed to the position of the Iowa Department of Health and Human Services (HHS) in its February 2, 2022 email sent to Arbor Court to explain how the short period cost report process would work in this situation and, while it made mention of the new legislation, the senior manager confirmed:

> Provider Cost Audit (PCA) *does allow for a short period cost report* for new providers and when there is a change of ownership. However, a cost report has to be submitted and PCA notified that a provider has elected to have a short period cost report used to establish a rate.
> Cost reports are due within five months after the fiscal year end. Without knowing the specific provider, there have been several

chances to submit a cost report to be used for rate setting. Those include the provider's actual fiscal year end, and three months after the change of ownership. Since the change of ownership took place in 2020 and inquiry about submitting a rate setting cost report was made in January 2022, *the request is not considered to be a timely request/submission* of a rate setting cost report, thus one would not be accepted in this instance.

(Emphasis added.)

Arbor Court presented evidence for the theory that HHS was applying its process arbitrarily along with its constitutional arguments. And, beyond the constitutional analysis found in the administrative law judge's decision, the tribunal also provided this ruling on Arbor Court's other preserved challenge:

The waiver provisions contained in the Iowa Administrative Procedures Act ("IAPA") and HHS's administrative rules also do not create any affirmative requirement for HHS to allow the short-report process. Under the IAPA, an agency, including HHS, has the authority to allow waivers of its rules when such a waiver is not foreclosed by state or federal law. . . .

. . . As evidence by the broad, often not-subject specific standards the Director must consider when deciding on a request for an exception to policy, nothing in the waiver rules specifically pertains to the reimbursement rates for new owners of existing nursing facilities, and nothing requires the Director to permit the short-report process. At most, a claim may exist that prior practice would need to guide the Director's discretion, but there was no known prior practice concerning Arbor Court's request to use short-report process more than a year after the change in ownership. There was a policy to allow such at least by the time the standard cost report was due, but this was months before Arbor Court's request. As such, nothing exists in the waiver rules to create a duty for HHS to allow Arbor Court's request when made.

No residual provision of HHS's rules entitles Arbor Court now to elect the short-report process. At its core, HHS was operating outside of its rules when it developed its internal policy of allowing new owners the chance at a short-report process because its rules did not provide for such and because the policy was not implemented through its waiver process, which is the legal mechanism to step outside of the rules in specific cases. HHS's argument about the short-form process being an "imperfectly executed exception to policy" has no salience in part because of the complete deviation of the practice from the procedural requirements of HHS's exceptions

to policy.  [Iowa Admin. Code r. 441-1.8(1)].  At most, and despite the specific testimony of HHS to the contrary at the hearing, HHS's action could be rationalized into permissibility by viewing it as HHS amending the cost report of an existing facility, which is directly authorized by rule "at any time" in HHS's "sole discretion."  [Iowa Admin Code r. 441-]81.6(13); Hearing Recording, at 1:26:46-:1:27:20 (HHS indicating the short-report process was *not* an amendment).  Assuming this amending procedure provides enough legal basis for HHS to reopen a cost report so as to allow a new owner of an existing facility to secure a new rate based on new cost information, this policy would still not provide Arbor Court with a basis for relief.

While Iowa statutory law requires agencies to exercise all discretion in a rational matter (and this would include a consistency component), the existing policy at the time of the purchase was to allow a facility to choose either a short-report process or the traditional method.  *See generally* Iowa Code § 17A.19(10)(n) (requiring agency action to be set aside if is "[o]therwise unreasonable, arbitrary, capricious, or an abuse of discretion").  No specific policy existed on whether a new owner could change its election or the timing of any such change in an election at least after the first standard cost report was submitted; the policy only considered requests up to that point in time.  Because there was no policy allowing the request at that time Arbor Court asked, HHS was within the bound of propriety to fully exercise its discretion unfettered by prior practice and deny the short-report request for any range of rational reasons, such as not wanting belated attempts to reset rates or not wanting any further movement in rates after a change to the reimbursement process such as what occurred when HF891 was passed.

Thus, I would also consider the argument made that HHS could still elect to allow Arbor Court the benefit of the short period cost report process irrespective of H.F. 891.  On appeal, Arbor Court clarified that "despite the 'regular' rules that required [HHS] to rebase case-mix nursing facility rates every other year, [HHS] had *always* and *without discretion* allowed the short period cost reporting process."  And it discussed what it believed to be concessions from the hearing record, including the February 2021 email from HHS stating that HHS applied exceptions to the rate-setting process that were viable even after H.F. 891 passed.  So on this argument, I also disagree with the majority's finding that error was not preserved.  This is not

the situation as found in *Archer Daniels Midland v. Williams*, 3 N.W.3d 231, 236 (Iowa Ct. App. 2023), where a completely new argument was advanced at the district court review stage from that made at the administrative level.

HHS addressed Arbor Court's argument in its post-administrative hearing briefing by noting that Arbor Court generally alleged HHS "errored by failing to follow its rules in its informal practice of allowing short [period] cost reports" and it detailed the process and dates as they applied to Arbor Court's specific situation. Those arguments were persuasive and were utilized by the administrative law judge in its findings.  Still, even considering this other argument, nothing changes for me as it pertains to the result because I agree with the reasoning of the administrative law judge, as adopted in the final decision, that there was nothing in the record showing that after new rates were set for a newly purchased facility, the facility could then retroactively ask for relief from the short period cost report process at any time in the future.  Thus, the application of HHS's informal process as to Arbor Court could not be considered unreasonable, arbitrary, capricious, or an abuse of discretion.